EXHIBIT "A"

Case# 2021-02234-0 - JUDGE33 Received at County of Bucks Prothonotary on 04/23/2021 12:56 PM, Fee = $258.50. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

**IN THE COURT OF COMMON PLEAS**
**BUCKS COUNTY, PENNSYLVANIA**
**CIVIL DIVISION**

| | | |
|---|---|---|
| **ABIRA MEDICAL LABORATORIES, LLC d/b/a GENESIS DIAGNOSTICS,** | } } } | |
| *Plaintiff* | } } | |
| vs. | } } } | **No.** _____ |
| **BIODIAGNOSTIC LABS, INC., NATHAN H. SONTAG, and GERSHON SONTAG,** | } } } } | **Type of Case:** **CIVIL CASE** |
| *Defendants* | } } } | **Type of Pleading:** **VERIFIED COMPLAINT** |
| _____ | } } } | **JURY TRIAL DEMANDED** |
| | } } | **Filed on Behalf of Plaintiff** |
| | } } | **Counsel for Plaintiff:** |
| | } } } } } } } } } } | **DAVID W. GHISALBERT, ESQ.** **Pa. Attorney ID No. 328556** **2000 Bering Drive, Suite 700** **Houston, Texas 77057** **(713) 808-9697 [telephone]** **dghisalbert@dwglawoffice.com** |

<u>**NOTICE TO DEFEND**</u>

     You have been sued in court. If you wish to defend against the claims set forth in the following pages, you must take action within twenty (20) days after this complaint and notice are served, by entering a written appearance personally or by attorney and filing in writing with the court your defenses or objections to the claims set forth against you. You are warned that if you fail to do so the case may proceed without you and a judgment may be entered against you by the court without further notice for any money claimed in the complaint or for any other claim or relief requested by the plaintiff. You may lose money or property or other rights important to you.

     YOU SHOULD TAKE THIS PAPER TO YOUR LAWYER AT ONCE. IF YOU DO NOT HAVE A LAWYER, OR CANNOT AFFORD ONE GO TO OR TELEPHONE THE OFFICES SET FORTH BELOW TO FIND OUT WHERE YOU CAN GET LEGAL HELP.

Case# 2021-02234-0 - JUDGE:33 Received at County of Bucks Prothonotary on 04/23/2021 12:56 PM, Fee = $258.50. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

Bucks County Bar Association
135 East State Street
Doylestown, PA 18901
Phone (215) 348-9413, 1-800-479-8585
www.bucksbar.org

PA Bar Association: www.pabar.org

*D.W. Ghisalbert*

DAVID W. GHISALBERT, ESQ.
Attorney for Plaintiff
Pa. Attorney ID No. 328556
2000 Bering Drive, Suite 700
Houston, Texas 77057
(713) 808-9697 [telephone]
dghisalbert@dwglawoffice.com

Case# 2021-02234-0 - JUDGE:33 Received at County of Bucks Prothonotary on 04/23/2021 12:56 PM, Fee = $258.60. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.



## COURT OF COMMON PLEAS OF BUCKS COUNTY, PENNSYLVANIA

ABIRA MEDICAL LABORATORIES LLC

vs.

BIODIAGNOSTIC LABS INC

NO. 2021-02234

## CIVIL COVER SHEET

State Rule 205.5 requires this form be attached to any document commencing an action in the Bucks County Court of Common Pleas.  The information provided herein is used solely as an aid in tracking cases in the court system.  This form does not supplement or replace the filing and service of pleadings or other papers as required by law or rules of court.

Name of Plaintiff/Appellant's Attorney:   David W. Ghisalbert, Esq., ID: 328556

Self-Represented (Pro Se) Litigant ☐

**Class Action Suit**   ☐ Yes   ☒ No

**MDJ Appeal**   ☐ Yes   ☒ No          **Money Damages Requested** ☒

**Commencement of Action:**          **Amount in Controversy:**

Complaint          More than $50,000

## Case Type and Code

Contract:

Other

**Other:**   BREACH OF REFERENCE LABORATORY AGREEMENT

Case# 2021-02234-0 - JUDGE:33 Received at County of Bucks Prothonotary on 04/23/2021 12:56 PM, Fee = $258.50. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents.

**Supreme Court of Pennsylvania**

**Court of Common Pleas**

_____ **County**

| For Prothonotary Use Only: | |
|---|---|
| Docket No: | *TIME STAMP* |

*The information collected on this form is used solely for court administration purposes. This form does not supplement or replace the filing and service of pleadings or other papers as required by law or rules of court.*

**Commencement of Action:**
- ☒ Complaint
- ☐ Writ of Summons
- ☐ Petition
- ☐ Transfer from Another Jurisdiction
- ☐ Declaration of Taking

| Lead Plaintiff's Name: Abira Medical Laboratories, LLC d/b/a Genesis Diagnostic | Lead Defendant's Name: Biodiagnostic Labs, Inc. |
|---|---|

**Are money damages requested?** ☒ Yes  ☐ No

Dollar Amount Requested: (check one)  ☐ within arbitration limits  ☒ outside arbitration limits

**Is this a Class Action Suit?** ☐ Yes  ☒ No  **Is this an MDJ Appeal?** ☐ Yes  ☒ No

Name of Plaintiff/Appellant's Attorney: David William Ghisalbert

☐ Check here if you have no attorney (are a Self-Represented [Pro Se] Litigant)

**Nature of the Case:** Place an "X" to the left of the **ONE** case category that most accurately describes your **PRIMARY CASE.** If you are making more than one type of claim, check the one that you consider most important.

**TORT** (do not include Mass Tort)
- ☐ Intentional
- ☐ Malicious Prosecution
- ☐ Motor Vehicle
- ☐ Nuisance
- ☐ Premises Liability
- ☐ Product Liability (does not include mass tort)
- ☐ Slander/Libel/ Defamation
- ☐ Other: _____

**MASS TORT**
- ☐ Asbestos
- ☐ Tobacco
- ☐ Toxic Tort - DES
- ☐ Toxic Tort - Implant
- ☐ Toxic Waste
- ☐ Other: _____

**PROFESSIONAL LIABLITY**
- ☐ Dental
- ☐ Legal
- ☐ Medical
- ☐ Other Professional: _____

**CONTRACT** (do not include Judgments)
- ☐ Buyer Plaintiff
- ☐ Debt Collection: Credit Card
- ☐ Debt Collection: Other
- ☐ Employment Dispute: Discrimination
- ☐ Employment Dispute: Other
- ☒ Other: Breach of Ref Lab Agrmnt Quantum Meruit

**REAL PROPERTY**
- ☐ Ejectment
- ☐ Eminent Domain/Condemnation
- ☐ Ground Rent
- ☐ Landlord/Tenant Dispute
- ☐ Mortgage Foreclosure: Residential
- ☐ Mortgage Foreclosure: Commercial
- ☐ Partition
- ☐ Quiet Title
- ☐ Other: _____

**CIVIL APPEALS**
Administrative Agencies
- ☐ Board of Assessment
- ☐ Board of Elections
- ☐ Dept. of Transportation
- ☐ Statutory Appeal: Other _____
- ☐ Zoning Board
- ☐ Other: _____

**MISCELLANEOUS**
- ☐ Common Law/Statutory Arbitration
- ☐ Declaratory Judgment
- ☐ Mandamus
- ☐ Non-Domestic Relations Restraining Order
- ☐ Quo Warranto
- ☐ Replevin
- ☐ Other: _____

*Updated 1/1/2011*

Case# 2021-02234-0 - JUDGE:33 Received at County of Bucks Prothonotary on 04/23/2021 12:56 PM, Fee = $258.50. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

# NOTICE

**Pennsylvania Rule of Civil Procedure 205.5. (Cover Sheet) provides, in part:**

**Rule 205.5.   Cover Sheet**

(a)(1)   This rule shall apply to all actions governed by the rules of civil procedure except the following:

    (i)   actions pursuant to the Protection from Abuse Act, Rules 1901 et seq.

    (ii)   actions for support, Rules 1910.1 et seq.

    (iii)   actions for custody, partial custody and visitation of minor children, Rules 1915.1 et seq.

    (iv)   actions for divorce or annulment of marriage, Rules 1920.1 et seq.

    (v)   actions in domestic relations generally, including paternity actions, Rules 1930.1 et seq.

    (vi)   voluntary mediation in custody actions, Rules 1940.1 et seq.

(2)   At the commencement of any action, the party initiating the action shall complete the cover sheet set forth in subdivision (e) and file it with the prothonotary.

(b)   The prothonotary shall not accept a filing commencing an action without a completed cover sheet.

(c)   The prothonotary shall assist a party appearing pro se in the completion of the form.

(d)   A judicial district which has implemented an electronic filing system pursuant to Rule 205.4 and has promulgated those procedures pursuant to Rule 239.9 shall be exempt from the provisions of this rule.

(e)   The Court Administrator of Pennsylvania, in conjunction with the Civil Procedural Rules Committee, shall design and publish the cover sheet. The latest version of the form shall be published on the website of the Administrative Office of Pennsylvania Courts at www.pacourts.us.

Case# 2021-02234-0 - JUDGE:33 Received at County of Bucks Prothonotary on 04/23/2021 12:56 PM, Fee = $258.50. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

**IN THE COURT OF COMMON PLEAS**
**BUCKS COUNTY, PENNSYLVANIA**
**CIVIL DIVISION**

| | |
|---|---|
| **ABIRA MEDICAL LABORATORIES,** §<br>**LLC d/b/a GENESIS DIAGNOSTICS,** §<br> §<br> *Plaintiff* §<br> §<br>**vs.** §<br> §<br>**BIODIAGNOSTIC LABS, INC.,** §<br>**NATHAN H. SONTAG, and** §<br>**GERSHON SONTAG,** §<br> §<br> *Defendants* § | CASE NO. _____ |

### PLAINTIFF'S VERIFIED COMPLAINT

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW, Abira Medical Laboratories, LLC d/b/a Genesis Diagnostics, the Plaintiff herein ("Plaintiff"), who files the following Complaint against Defendants BioDiagnostic Labs, Inc., Nathan H. Sontag, and Gershon Sontag (the "Defendants"). In support thereof, Plaintiff would respectfully show unto the Court as follows:

I.

### INTRODUCTION

1.      This is a breach of contract case concerning medical laboratory testing services provided by the Plaintiff to the Defendants. Plaintiff will be seeking actual damages of not less than $1,633,905.00, plus interest, all costs of court, and attorney's fees.

II.

### PARTIES

2.      Plaintiff is a New Jersey limited liability company authorized to conduct business in the Commonwealth of Pennsylvania. It holds a medical laboratory testing license issued by the

Case# 2021-02234-0 - JUDGE:33 Received at County of Bucks Prothonotary on 04/23/2021 12:56 PM; Fee = $288.50. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

Commonwealth of Pennsylvania, and it maintains its principal place of business at 900 Town Center Drive, Suite H50, Langhorne, Pennsylvania 19047.

3.       Defendant BioDiagnostic Labs, Inc. ("BDL") is a New York company licensed by the Pennsylvania Department of Health to provide urine and saliva laboratory services on specimens collected from citizens residing in the Commonwealth of Pennsylvania. Defendant BDL may be served with process by and through its registered agent for service Gershon Sontag, President, at 2380 East 22nd Street, Brooklyn, New York 11229.

4.       Defendant Nathan H. Sontag is an individual who resides in the State of New York, and who, on information and belief, is an owner and control person of Defendant BDL. Defendant Nathan Sontag may be personally served with process at 1231 East 26th Street, Brooklyn, New York 11210-4618.

5.       Defendant Gershon Sontag is an individual who resides in the State of New York, and who, on information and belief, is an owner and control person of Defendant BDL. Defendant Gershon Sontag may be personally served with process at 1015 East 24th Street, Brooklyn, New York 11210.

III.

## JURISDICTION and VENUE

6.       Subject matter jurisdiction of this action is proper herein by virtue of 42 Pa. C. S. §931(a). The Court has personal jurisdiction over the Defendants in accordance with 42 Pa. C. S. §5301(a).

7.       Venue is proper in this Court in furtherance of 42 Pa. R. C. P. §1006(a)(1), and/or 42 Pa. R. C. P. §2179(a) because a substantial part of the events, transactions and/or occurrences giving rise to Plaintiff's claims set forth herein occurred within this judicial district.

Case# 2021-02234-0 - JUDGE:33 Received at County of Bucks Prothonotary on 04/23/2021 12:56 PM, Fee = $258.50. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

IV.

FACTUAL BACKGROUND

8.     The Plaintiff is a national medical testing laboratory company based in Langhorne, Pennsylvania. It holds a Pennsylvania medical laboratory license, and it employs approximately 150 employees, including, but not necessarily limited to physicians, scientists, technicians, sales representatives, and administrative personnel. Those personnel provide full-service clinical and toxicology laboratory testing for thousands of individuals located throughout the United States, commonly upon referral of a medical doctor for their patients.

9.     As part of its business model, the Plaintiff performs clinical laboratory, pharmacy, genetics, and addiction rehabilitation testing services at its facilities in Langhorne, Pennsylvania for numerous patients located throughout the United States (the "Laboratory Testing Services"). Those Laboratory Testing Services are normally billed to a patient's third-party insurer, Medicare, or Medicaid, to a medical service provider in furtherance of a reference laboratory services agreement, or directly to the patient.

10.     Defendant BDL sought to obtain Plaintiff's Laboratory Testing Services for the benefit of Defendants' patients. In furtherance of the Defendants' desire to utilize Plaintiff's Laboratory Testing Services, the parties entered into a Reference Laboratory Agreement on September 16, 2020 (the "Agreement"), as well as an Addendum to the Reference Laboratory Agreement dated the same date (the "Addendum"). True and correct copies of both the Agreement and its attending Addendum are attached hereto, and incorporated herein for all purposes as Exhibits "1," and "2," respectively.

11.     Amongst the material terms included within the Agreement, were the following: (1) an initial term of one (1) year, with automatic one-year renewals of the Agreement (*see* Section

Case# 2021-02334-0 - JUDGE 33 Received at County of Bucks Prothonotary on 04/23/2021 12:56 PM, Fee = $258.50. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

7.1); (2) Laboratory Testing Services were to be limited to Plaintiff providing COVID-19 testing services upon all specimens provided by the Defendants [*see* Sections 3.1(a) and (b) of the Agreement]; (3) Plaintiff was to be paid $45.00 per specimen as set forth in Section 4.4(a) and Schedule 2 of the Agreement; and (4) all fees to be paid by the Defendants were to be paid in accordance of the terms contained in Section 4.4(b) of the Agreement, as well as the paragraphs 1, 2, and 3 of the Addendum.

12.     In furtherance of the Agreement, Defendant BDL collected specimens from its patients and sent them to Plaintiff's laboratory facilities in Langhorne, Pennsylvania for testing and analysis. After the Laboratory Testing Services were conducted by the Plaintiff in Bucks County, Pennsylvania, the data and analysis collected from the tests were uploaded to the Plaintiff's computer servers which were also maintained in Langhorne, Pennsylvania. Thereafter, the data and testing results were made available to the Defendants via specialized software maintained on the Plaintiff's computer servers. The Defendants would be given electronic access to the information maintained on Plaintiff's computers for retrieval and use with their patients.

13.     Under the Agreement, the Plaintiff complied with the terms of the contract and performed all Laboratory Testing Services requested of it by the Defendants. Beginning on September 30, 2020, the Defendants were invoiced by the Plaintiff on a bi-weekly basis for Laboratory Testing Services rendered by the Plaintiff from its facilities in Pennsylvania. As reflected by the attached statement of account, after deducting all payments and offsets tendered by the Defendant, a balance of $1,633,905.00 remains due and owing to the Plaintiff as a result of their default under the terms of the Agreement and its Addendum. A true and correct copy of the March 23, 2021 Statement of Account is attached hereto and incorporated herein for all purposes as Exhibit "3."

Case# 2021-02234-0 - JUDGE:33 Received at County of Bucks Prothonotary on 04/23/2021 12:56 PM, Fee = $258.50. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

14.     The Defendants were put on notice of their default, and they were given an opportunity to cure same. The Defendants failed to do so, thereby leading to demand having been made upon them for immediate payment of all past due invoices. Defendants neglected to respond to Plaintiff's demand, and they failed to submit timely payment of the past due invoices.

15.     As of the date of filing of this complaint, the Defendants have failed to tender any further payments. Pursuant to Section 7.2(a) of the Agreement, Plaintiff was forced to terminate the Agreement and suspend all further services because of Defendants' prolonged refusal to make payment. In sum, Defendants have failed to satisfy their contractual obligations by paying the past due invoices. Indeed, Defendants have made no effort whatsoever to resolve this dispute or even correspond with Plaintiff regarding the sums past due and owing.

V.

CAUSES OF ACTION

A.     **COUNT 1 – Breach of Contract**.

16.     Plaintiff realleges and incorporates herein, as if fully set forth at length, each of the factual recitations set forth in paragraphs 1 through 15 above.

17.     As reflected by the essential terms contained within Exhibits 1 and 2, the Agreement and Addendum constitute a contract between the Plaintiff and Defendants that was valid and enforceable at all times relevant to this lawsuit. Exhibits 1 and 2 establish the fact that the Defendants had a duty to timely pay for all Laboratory Testing Services rendered by the Plaintiff to Defendants' patients. While Plaintiff fully performed its duties and obligations under that contract, for their part, as reflected by Exhibit 3, the Defendants failed in their duty under the contract to timely pay the outstanding balance, which remains due and owing as of the date of filing this complaint. The Defendants' breach of their duties associated with the Agreement and

Case# 2021-02234-0 - JUDGE:33 Received at County of Bucks Prothonotary on 04/23/2021 12:56 PM, Fee = $258.50. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

its Addendum proximately caused the Plaintiff to sustain direct damages in an amount of not less than $1,633,905.00.

18.     Plaintiff is thus entitled to judgment against Defendants in an amount of not less than $1,633,905.00, plus pre- and post-judgment interest at the highest rates allowed by law.

**B.      COUNT 2 – Quantum Meruit/Unjust Enrichment.**

19.     Plaintiff realleges and incorporates herein, as if fully set forth at length, each of the factual recitations set forth in paragraphs 1 through 15 above.

20.     Should the contract represented by Exhibits 1 and 2 be contested, then Plaintiff pleads in the alternative its claim for Quantum Meruit/Unjust Enrichment.

21.     At Defendant's request, Plaintiff conferred a benefit upon Defendants by providing the Laboratory Testing Services described in Exhibit 1. Plaintiff in fact performed the Laboratory Testing Services with the reasonable expectation that it would be compensated for those services. By providing those services to Defendants, Plaintiff conferred a measurable benefit upon the Defendants. Plaintiff did not provide the Laboratory Testing Services gratuitously.

22.     Defendants consciously, knowingly, and voluntarily accepted the Laboratory Testing Services with the full understanding that Plaintiff had a reasonable expectation to get paid pursuant to the terms of the Agreement, its Addendum, and the past due invoices reflected within Exhibit 3. As the result of Defendants' receipt and acceptance of the Laboratory Testing Services, and their failure to pay the outstanding balance reflected within Exhibit 3, the Defendants were unjustly enriched by the Laboratory Testing Services provided by the Plaintiff.

23.     Allowing Defendants to retain the benefit of the Laboratory Testing Services without paying fair compensation would be unjust. Under principles of equity, Plaintiff is entitled to recover from Defendants the reasonable value of the Laboratory Testing Services. The

Case# 2021-02234-0 - JUDGE:33 Received at County of Bucks Prothonotary on 04/23/2021 12:55 PM, Fee = $258.50. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

reasonable value of the Laboratory Testing Services provided by Plaintiff and accepted by the Defendants is $1,633,905.00, plus interest pursuant to the Agreement and past due invoices.

24.      By reason of the aforesaid unjust enrichment of Defendants at Plaintiff's expense, Plaintiff is entitled to judgment against Defendants in the amount of $1,633,905.00, plus interest.

VII.

## ALTER EGO

25.      Plaintiff realleges and incorporates herein, as if fully set forth at length, each of the factual recitations and allegations set forth in paragraphs 1 through 24 above.

26.      Defendant BDL is a mere alter ego of individual Defendants Nathan and/or Gershon Sontag. As reflected by Exhibit 3, Defendant BDL is inadequately capitalized, and the parties responsible for that undercapitalization are individual Defendants Nathan and/or Gershon Sontag, who on information and belief, are the owners of Defendant BDL, and who further on information and belief, exerted control to influence the corporate decisions and actions of Defendant BDL for their personal interests. Under these circumstances, equity requires holding individual Defendants Nathan and/or Gershon Sontag personally liable for the corporate debt of Defendant BDL, whose corporate form should be disregarded.

VIII.

## DAMAGES AND ATTORNEY'S FEES

27.      Plaintiff realleges and incorporates herein, as if fully set forth at length, each of the factual recitations and allegations set forth in paragraphs 1 through 26 above.

28.      Plaintiff requests all damages, compensatory, direct, general and/or special, legal and equitable, as allowed by law; in excess of the minimum jurisdictional limits of the Court. The Plaintiff also requests judgment for all other relief to which it may show itself entitled to receive.

Case# 2021-02234-0 - JUDGE:33 Received at County of Bucks Prothonotary on 04/23/2021 12:56 PM, Fee = $258.50. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

29.     To the extent allowed by either contract, statute, common law, or equity, Plaintiff additionally seeks to recover its reasonable and necessary attorney's fees incurred by it with respect to the claims and/or defenses asserted in this lawsuit.

IX.

### JOINT and SEVERAL LIABILITY

30.     The Defendants are jointly and severally liable to the Plaintiff for all damages sought herein.

X.

### PRE – AND POST-JUDGMENT INTEREST

31.     Plaintiff hereby pleads for pre-judgment interest at the maximum rate allowed by law. Plaintiff further pleads for post-judgment interest at the maximum rate allowed by law.

XI.

### COSTS OF COURT and OUT-OF-POCKET EXPENSES

32.     Plaintiff pleads for all costs of court and out-of-pocket expenses incurred during the course of its prosecution of the instant lawsuit.

XII.

### JURY DEMAND

33.     In furtherance of 231 Pa. Code §1007.1, Plaintiff hereby demands a trial by jury on all issues of fact raised herein.

WHEREFORE, PREMISES CONSIDERED, Plaintiff Abira Medical Laboratories, LLC d/b/a Genesis Diagnostics prays for judgment against Defendants BioDiagnostic Labs, Inc., Nathan H. Sontag, and Gershon Sontag, jointly and severally, and requests the Court to award it the following damages in this case:

Case# 2021-02234-0 - JUDGE:33 Received at County of Bucks Prothonotary on 04/23/2021 12:56 PM, Fee = $268.50. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

(a)    compensatory, direct, or actual damages in the amount of not less than $1,633,905.00;

(b)    all legal, equitable, consequential, and/or incidental damages as determined by the trier of fact;

(c)    attorney's fees, costs of court, and out-of-pocket expenses;

(d)    pre- and post-judgment interest at the highest rate(s) allowed by law; and

(e)    all such other and further relief, either at law or in equity, as may be deemed appropriate by the Court.

Respectfully submitted this 23rd day of April, 2021.


LAW OFFICE OF DAVID W. GHISALBERT


By:     / S /  D.W. Ghisalbert _____
        David W. Ghisalbert
        Pa. ID No. 328556
        2000 Bering Drive, Suite 700
        Houston, Texas 77057
        (713) 808-9697 [telephone]
        (713) 893-6942 [facsimile]
        dghisalbert@dwglawoffice.com  [email]

        ATTORNEY FOR PLAINTIFF,
        ABIRA MEDICAL LABORATORIES,
        LLC d/b/a GENESIS DIAGNOSTICS

Case# 2021-02234-0 - JUDGE:33 Received at County of Bucks Prothonotary on 04/23/2021 12:56 PM, Fee = $258.50. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

## VERIFICATION

I, Abraham Miller, Vice President of Research & Development for Abira Medical Laboratories, LLC d/b/a Genesis Diagnostics, hereby verifies that the facts set forth in the foregoing Complaint are true and correct to the best of my knowledge, information and belief. I understand that the statements herein are made pursuant to 18 Pa. C.S.A. §4904 relating to unsworn falsification to authorities.

Dated: April 23, 2021

_____

Abraham Miller, Vice-President
of Research and Development for
Abira Medical Laboratories, LLC
d/b/a Genesis Diagnostics

Page 10 of 10

Case# 2021-02234-0 - JUDGE:33 Received at County of Bucks Prothonotary on 04/23/2021 12:56 PM, Fee = $258.50. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

# EXHIBIT "1"

DocuSign Envelope ID: 37083C80-3B7D-4763-B7BA-D29CE4EFF8BD

Case# 2021-02234-0 - JUDGE:33 Received at County of Bucks Prothonotary on 04/23/2021 12:56 PM, Fee = $258.50. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

# REFERENCE LABORATORY AGREEMENT

This Reference Laboratory Agreement (this "**Agreement**") is made and entered into effective as of 9/16/2020 _____, (the "**Effective Date**"), by and between **ABIRA MEDICAL LABORATORIES, LLC D/B/A GENESIS DIAGNOSTICS**, a New Jersey Limited Liability Company (the "**Service Provider**") and **BIODIAGNOSTIC LABS INC.**, a New York Corporation ("**BDL**"). The **Service Provider** and BDL are sometimes referred to in this **Agreement** individually as a "**Party**" and collectively as the "**Parties**."

## *RECITALS*

**A.** The **Service Provider** is a New Jersey limited liability company that owns and operates a CLIA-certified, licensed clinical laboratory (the "**Service Provider Laboratory**") located at 900 Town Center Drive, Suite H-50, Langhorne, Pennsylvania.

**B.** **BDL** has a CLIA-certified clinical laboratory located at 2380 East 22nd Street, Brooklyn, New York 11229, and is engaged in the business of providing clinical diagnostic laboratory services.

**C.** **BDL** desires to utilize an independent clinical laboratory for certain clinical diagnostic laboratory services for the benefit of the BDL's patients.

**D.** **BDL** desires to obtain from the **Service Provider**, and the **Service Provider** desires to provide to BDL, certain clinical diagnostic laboratory services not currently provided by **BDL**, on behalf of **BDL**, in accordance with the terms and conditions of this **Agreement**.

In consideration of the foregoing recitals and for other good and valuable consideration, the receipt and sufficiency of which are acknowledged, the **Parties**, intending to be legally bound, agree as follows:

**1.** **Definitions.**

**1.1** "**Accessioning Services**" means, with respect to a **Specimen**, (i) the receipt of such **Specimen** at the **Service Provider Laboratory**, (ii) the subsequent unpackaging of such **Specimen** at the **Service Provider Laboratory**, and (iii) the subsequent determination of the applicable payor or payors of such **Specimen**.

**1.2** "**Affiliate**" means, as to any **Person**, any other **Person** that, directly or indirectly, controls, is controlled by, or is under common control with, such **Person**, but only as long as such control exists. For this purpose, control (or any grammatical variation thereof) means (i) ownership or voting rights over at least fifty (50%) percent of the outstanding voting or equity securities of the **Person** in question or (ii) the power to direct or cause the direction of management or policies of such **Person**, whether through voting securities, by contract, or otherwise.

**1.3** "**Business Day**" means any day that is not a Saturday, Sunday or official federal holiday in the United States.

**1.4** "**Collection Period**" means the period commencing on and ending on the **Termination Date**.

**1.5** "**Confidential Information**" means the terms of this **Agreement**, all patent applications, licenses, copyrights, trademarks, trade names, service marks, service names, know-how, trade secrets, customer or patient lists, details of client or consulting contracts, pricing policies, operational methods, marketing plans or strategies, product development techniques or plans, procurement and sales activities, promotional and pricing techniques, credit and financial data concerning customers, business acquisition plans, or any portion or phase of any scientific or technical information, ideas, discoveries,

DocuSign Envelope ID: 37083C80-3B7D-4763-B7BA-D29CE4EFF8BD

designs, computer programs (including source or object code), processes, procedures, formulas or improvements of a **Party**, whether or not in written or tangible form, and whether or not registered, and any and all other information concerning a **Party** and including all memoranda, notes, plans, reports, records, documents, and other evidence thereof.

        1.6      "**Default Interest Rate**" means the lesser of (i) One (1%) percent per month or (ii) the maximum amount permitted by applicable law.

        1.7      "**Disclosing Party**" means a **Party** that discloses or makes available such **Party's Confidential Information**.

        1.8      "**Governmental Payor**" means any plan or program providing health care benefits, whether directly through insurance or otherwise, that is funded directly, in whole or in part, by the United States Government (other than the Federal Employees Health Benefits Program), or any state health care program, including Medicare, Medicaid, and any Medicare or Medicaid managed care program.

        1.9      "**Governmental Reimbursement**" means reimbursement actually received by the **Service Provider** from a **Governmental Payor**.

        1.10      "**Laboratory License**" means any license, permit, registration, certification, or accreditation with respect to the **Service Provider** and **BDL** required for the **Service Provider** to provide the **Laboratory Services**.

        1.11      "**Laboratory Services**" means the full-range of services necessary for the laboratory analysis of **Specimens**, including (i) coordinating the receipt of all **Specimens** from providers at the **Service Provider Laboratory**, (ii) providing the **Accessioning Services**, and (iii) the running of all necessary tests on such **Specimens**, at the **Service Provider Laboratory** or through reference laboratories in accordance with the notice requirements in **Section 13.7**.

        1.12      "**Laboratory Services Fee**" is defined in **Section 4.4**.

        1.13      "**Service Provider License**" means any license, permit, registration, certification, or accreditation with respect to **Service Provider** required by the Commonwealth of Pennsylvania Department of Health Services, U.S. Department of Health, or any other applicable federal or state law or accreditation body.

        1.14      "**BDL's License**" means any license, permit, registration, certification, or accreditation with respect to **BDL** required by the U.S. Department of Health or any other applicable federal or state law or accreditation body to operate a clinical laboratory.

        1.15      "**Person**" means any individual, corporation (including any non-profit corporation), general or limited partnership, limited liability company, joint venture, association, organization, or other entity or governmental body.

        1.16      "**Recipient**" means a **Party** that receives or obtains the other **Party's Confidential Information**.

        1.17      "**Specimens**" means collectively human specimens for clinical diagnostic laboratory testing (Cardio) and all other specimens mutually agreed-to by the **Parties** in writing. **Service Provider** and **BDL** agree that all **Specimens** shall be collected from patients located in those States approved by **Service Provider**; provided, however, that the **Parties** may mutually agree in writing to add other states from time-to-time.

        1.18      "**Term**" is defined in **Section 7.1**.

Case# 2021-02234-0 - JUDGE33 Received at County of Bucks Prothonotary on 04/23/2021 12:56 PM, Fee = $268.50. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

DocuSign Envelope ID: 37083C80-3B7D-4763-B7BA-D29CE4EFF8BD

Case# 2021-02334-0 - JUDGE:33 Received at County of Bucks Prothonotary on 04/23/2021 12:56 PM, Fee = $258.50. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

**1.19**    "**Termination Date**" means the date on which the termination of this **Agreement** occurs (after giving effect to any applicable notice periods).

**1.20**    "**Test Order**" means a request for **Laboratory Services**, the provision of which for **BDL** is coordinated by the **Service Provider**, and on which the **Service Provider** and **BDL** are listed, in accordance with the limitations set forth in **Section 3.1(b)**.  As of the **Effective Date**, the forms of **Test Orders** are attached as **Exhibit A**.  The **Service Provider** and **BDL** shall have the right to modify the form of the **Test Orders** or to add an additional form of **Test Orders** at any time following the **Effective Date** upon the mutual agreement of the **Parties** in writing.

**1.21**    "**Third Person**" means any **Person** that is not a **Party**.

**2.**    **Non-Exclusive Appointment**.  BDL and the **Service Provider** acknowledge and agree that this **Agreement** is non-exclusive, and nothing in this **Agreement** shall prevent **BDL** from using other reference laboratories.  Nothing in this **Agreement** shall prohibit the **Service Provider** from providing substantially the same or similar services on the **Service Provider** own behalf or on behalf of any **Third Person**.  Further, the engagement of the **Service Provider** by **BDL** shall not be deemed a violation of any of **BDL's** rights.

**3.**    **Service Provider's Obligations**.

**3.1**    **Laboratory Services**.

(a)    Subject to the terms of this **Agreement**, **Service Provider** shall provide the **Laboratory Services** for all **Specimens** relating to all **Test Orders** provided to **BDL** or otherwise coordinated by the **Service Provider** in accordance with the terms of such **Test Orders** and for all other **Specimens** mutually agreed-to by the **Parties** in accordance with the terms of the applicable **Test Orders**. **BDL** is responsible for ensuring that Test Orders are valid and complete, including, without limitation, all patient demographics, ordering physician or authorized person identifiers, and diagnostic information necessary in compliance with all applicable federal, state and local statutes, rules and regulations. All **Test Orders** submitted or electronically transcribed to the **Service Provider** shall include sufficient detail to allow the **Service Provider**, including, without limit, to accurately identify the ordering clinician and the ordering clinician's unique physician identification number or other applicable identifying information.

(b)    Notwithstanding anything to the contrary in this **Agreement**, any and all **Specimens** sent for services to the **Service Provider**, and any and all **Test Orders** provided to **Service Provider** or otherwise coordinated by the **Service Provider** under this **Agreement**, shall be limited to COVID-19.

(c)    **Service Provider** **does not** provide any shipping labels, shipping supplies, personnel, collection supplies, testing kits[1], and/or equipment necessary for the performance of the **Laboratory Services**. **Service Provider** provides only the services necessary for resulting of the **specimens** along with the testing report. Without limiting the foregoing, **BDL** shall only use equipment and supplies the **Service Provider** deems appropriate and in compliance with applicable rules and regulations and shall ensure that proper equipment and supplies are available to provide the **Laboratory Services** throughout the **Term**.  Notwithstanding the foregoing and any other provision of this **Agreement**, if, upon the mutual agreement of the **Service Provider** and **BDL**, the **Service Provider** places any equipment at **BDL** or otherwise makes equipment available to **BDL** in the course of providing the **Laboratory Services** (such equipment, "**Service Provider Equipment**"), all **Service Provider** Equipment shall remain the sole and exclusive property of the **Service Provider**, and no rights to any **Service Provider Equipment** shall inure to the benefit of **BDL** by virtue of this **Agreement** or any course of conduct between the **Parties**.  In the event that the **Service Provider** and **BDL** mutually agree that the **Service Provider** can place **Service Provider Equipment** at **BDL**, at all times during the **Term** and for a period of Sixty (60) days thereafter, (i)

---

[1] Service Provider will provide the swabs necessary for the COVID-19 testing.

DocuSign Envelope ID: 37083C80-3B7D-4763-B7BA-D29CE4EFF8BD

the **Service Provider** may remove or replace, in the **Service Provider** sole discretion, **Service Provider Equipment** or any portion thereof and (ii) **BDL** shall, during normal business hours or at such other times as may be agreed upon by **BDL** and the **Service Provider**, grant the **Service Provider** such access to **BDL** as may be reasonably necessary to allow the **Service Provider** to remove or replace **Service Provider Equipment**. In the event that the **Service Provider** and **BDL** mutually agree that the **Service Provider** will use certain equipment at **BDL** that is the property of **BDL** (the "**BDL's Equipment**"), the **Service Provider** and **BDL** will review and determine in good faith a commercially reasonable usage fee consistent with fair market value to be paid by the **Service Provider** associated with the **Service Provider** use of such **BDL Equipment**.

(d)     The **Service Provider** shall make available reports regarding the results of the **Laboratory Services** as soon as the results are available.

(e)     All **Laboratory Services** and associated administrative services shall be furnished by **Service Provider** in accordance with applicable law and commercially reasonable standards of laboratory companies operating in the Pennsylvania area.

(g)     **Service Provider** attests that neither **Service Provider** nor any employee or agent rendering services hereunder: (i) has been convicted of a criminal offense related to health care (unless such individual has been officially reinstated into the federal health care programs by the HHS Office of Inspector General ("**OIG**") and provided proof of such reinstatement); (ii) is under sanction, exclusion or investigation (civil or criminal), to the best of **Service Provider** knowledge, after reasonable due diligence, related to health care by any federal or state enforcement, regulatory, administrative or licensing agency or is ineligible for federal or state program participation; or (iii) is listed on OIG's List of Excluded Individuals or Entities (www.oig.hhs.gov/exclusions/index.aspoig.hhs.gov), the System for Award Management (www.SAM.gov) or the applicable Medicaid Disqualified Provider List.  **Service Provider** shall immediately notify **BDL** in writing of any such conviction, sanction, exclusion, investigation or listing of **Service Provider**, or any person rendering the **Services** hereunder on behalf of **Service Provider**, and **Service Provider** shall have the option of immediately terminating this **Agreement**, in whole or in part, as necessary and applicable in **Service Provider's** sole discretion.

(h)     In the event that **Service Provider** wishes to discuss operational issues with a representative of **BDL**, **Service Provider** shall contact **Kathy Kolokotsas** at the following number: (186468000, 22 (kathy@andllab.com).  In the event that **BDL** wishes to discuss operational issues with a representative of **Service Provider**, **BDL** shall contact either **Phillip Scheible, Molecular & NGS Laboratory Manager** (267) 212-2000 Ext: 156 (pscheible@genesisdx.com), or **Aravind, Finance** at 267-212-2000, ext. 190 (aravinda@genesisdx.com).

### 3.2     Billing and Collection.

(a)     All **Laboratory Services** performed by the **Service Provider** pursuant to this **Agreement** shall be billed by **BDL**.  **BDL** shall submit claims for payment for such tests to the responsible party for payment for the service, and the **Service Provider** shall not submit any claims for the **Laboratory Services** provided pursuant to this **Agreement**.

(b)     **BDL** covenants that it will comply in all material respects with applicable federal, state and local laws pertaining to the billing, referral, markup and disclosure of information relating to the performance of the **Laboratory Services** to be provided hereunder by **Service Provider**, including, without limit, its compliance with the provisions of Medicare's 70/30 rule in billing for tests referenced to **Service Provider**. **BDL** is solely responsible for determining whether and the extent to which **BDL** is permitted to rebill for the **Laboratory Services** purchased by **BDL** from **Service Provider**, and **Service Provider** shall have no obligation or liability with respect thereto.

Case# 2021-02234-0 - JUDGE:33 Received at County of Bucks Prothonotary on 04/23/2021 12:56 PM, Fee = $258.50. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential Information and documents differently than non-confidential Information and documents.

DocuSign Envelope ID: 37083C80-3B7D-4763-B7BA-D29CE4EFF8BD

(c)     The **Service Provider** shall not be responsible for any of the costs associated with the billing and collection of the **Laboratory Services** provided by the **Service Provider** pursuant to this **Agreement**.

(d)     **BDL** will maintain accounting, billing, and collection records of the **Laboratory Services** provided by the **Service Provider** for BDL in accordance with generally accepted industry standards, which records will be subject to inspection by **BDL** and the **Service Provider** pursuant to **Section 6**.

**3.3     Costs and Expenses**.  The **Service Provider** shall bear the entire cost and expense of conducting the **Service Provider** business in accordance with this **Agreement**, excluding any and all premium expenses associated with adding the **Service Provider** as an additional insured with respect to the insurance contemplated in **Section 4.3**, and all billing and collection costs associated with the **Laboratory Services**.  In no event, however, shall the **Service Provider** be responsible for any costs and expenses of BDL described in **Section 4.1**.

(a)     **Laboratory Information System (LIS) and Electronic Health Records (EHR)**.  Service Provider and BDL have agreed to a 50/50 split of the cost to set up an interface between the Laboratory Information System (**LIS**) and the physician practice's Electronic Health Records (**EHR**) system to order and communicate the results of laboratory tests.

**3.4     Compliance with Policies and Laws**.     Without limitation on any other requirements under this **Agreement**, the **Service Provider** shall comply with all **Policies** that have been provided to the **Service Provider** in writing (including as such **Policies** may be amended from time-to-time, provided that such amendments are provided to the **Service Provider** in writing).  The **Service Provider** shall comply with all laws and regulations in undertaking the **Service Provider** duties and obligations under this **Agreement**, including federal, state, and local laws and regulations and including laws and regulations affecting billing and reimbursement referrals, fraud and abuse, patient privacy, and confidentiality.  The **Service Provider** represents and warrants that, during the **Term**, the **Laboratory Services** shall, to the **Service Provider** best knowledge after due inquiry, be **(a)** rendered pursuant to a valid order by a duly licensed practitioner, and **(b)** performed in accordance with all standards applicable to the operations of a clinical laboratory in Pennsylvania.

**3.5     Quality Control**.  To the extent requested by the **Service Provider**, **BDL** shall participate in the **Service Provider** quality improvement and utilization procedures by **(i)** providing quarterly performance improvement reports on performance of the **Laboratory Services** and **(ii)** ensuring that **BDL** participates in **Service Provider** audit, quality assurance, and utilization review efforts as determined necessary by **Service Provider**.

**3.6     Insurance**.

(a)     The **Service Provider** shall obtain, provide, and maintain customary workers' compensation insurance coverage for the **Service Provider** employed or engaged personnel. The limits of coverage and deductible amounts under such workers' compensation insurance shall be no less than $1,000,000 for each accident for bodily injury by accident, $1,000,000 for each employee for bodily injury by disease, and such insurance shall have a $1,000,000 policy limit for bodily injury by disease. The **Service Provider** represents and warrants that the **Service Provider** is not a nonsubscriber for purposes of workers' compensation insurance.

(b)     The **Service Provider** shall obtain, provide, and maintain commercial general liability insurance with regard to the **Laboratory Services** provided under this **Agreement**, with limits of $1,000,000 per occurrence and $3,000,000 in the aggregate, and such other insurance policies that the **Service Provider** customarily maintains for the **Service Provider** client services (collectively, the "**Provider Policies**").  The **Service Provider** shall cause BDL to be insured by the **Provider Policies**; provided, however, that BDL's coverage under the **Provider Policies** shall be limited to claims arising from

Case# 2021-02234-0 - JUDGE:33 Received at County of Bucks Prothonotary on 04/23/2021 12:56 PM, Fee = $288.50. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

DocuSign Envelope ID: 37083C80-3B7D-4763-B7BA-D29CE4EFF8BD

the **Laboratory Services** for which **BDL** may be determined to be vicariously liable. Any changes to the limits of coverage and deductible amounts under the **Provider Policies** shall be mutually agreed-to by the **Parties**.

(c)     A written certificate or certificates of coverage for the insurance under this **Section 3.6** shall be provided to **BDL** together with certification that such coverage may not be canceled without at least Thirty (30) days' notice to **BDL**. The **Service Provider** shall give **BDL** notice of any material changes in the status of the **Service Provider** coverage.

(d)     All insurance required by the **Service Provider** under this **Section 3.6** shall contain provisions that the **Service Provider** insurer(s) shall have no right of subrogation against **BDL**, it being the intent of the **Parties** that such insurance policies (other than workers' compensation insurance) shall protect each of **BDL** and the **Service Provider**.

(e)     Notwithstanding the provisions of this **Section 3.6** requiring the **Service Provider** to name **BDL** as an additional insured or as a protective co-insured, the provisions of this **Section 3.6** are (i) limited to coverage for claims, demands, suits, and actions resulting from the **Service Provider** provision of the **Laboratory Services** under this **Agreement**, (ii) not intended to derogate from the division of risk and indemnity agreements set out under this **Agreement**, and (iii) not intended to apply to workers' compensation insurance.

3.7     **Subcontractors**. The **Service Provider** is hereby permitted to engage **Third Persons** to perform all, or any portion of, the **Laboratory Services**. **Schedule 1** sets forth all **Third Persons** engaged by the **Service Provider** as of the **Effective Date** to perform all, or any portion of, the **Laboratory Services**. Except for emergency circumstances, the **Service Provider** shall provide prior written notice (in accordance with **Section 13.8**) of any anticipated change to **Schedule 1**, and **BDL** shall have Fifteen (15) Business Days following receipt of such notice to reject the proposed change. In the event that **BDL** rejects a proposed change in writing (in accordance with **Section 13.8**) within the fifteen-Business Day period, **Schedule 3.7** shall not be amended to reflect such proposed change. **BDL's** failure to notify the **Service Provider** in writing of **BDL's** rejection of the proposed change within such fifteen-Business Day period shall be treated as **BDL's** approval of the proposed change. If the **Service Provider** engages any **Third Person** to perform all, any or any portion of, the **Laboratory Services**, the **Service Provider** shall remain fully liable for all costs and actions of such **Third Person** and ultimately responsible for providing such **Laboratory Services** and the **Service Provider** shall not be released from any of the obligations in this **Agreement**.

4.     **BDL's Obligations**.

4.1     **Specimens**. **BDL** shall use reasonable efforts to enter all **Specimens** into **BDL's** computer system in accordance with all applicable **Payor Agreements** (as defined below). **BDL** shall be responsible for (and the **Service Provider** shall not be responsible for) any and all costs and expenses associated with **BDL's** receipt and storage of the **Specimens**, including rent, electric utilities, refrigerators, Internet connectivity, and janitorial services at all **BDL** facilities and the personnel required for entering the **Specimens** into the system.

4.2     **Managed Care Contracting**. The **Service Provider** shall not be responsible for the evaluation, negotiation, execution, or monitoring of compliance with any agreement that OLYMPUS maintains with payor (each, a "**Payor Agreement**" and collectively, the "**Payor Agreements**"). **BDL** shall use reasonable efforts to not enter into, modify, or terminate any **Payor Agreement** in a manner that materially and adversely affects the **Laboratory Services** without first consulting with the **Service Provider**.

Case# 2021-02234-0 - JUDGE:33 Received at County of Bucks Prothonotary on 04/23/2021 12:56 PM, Fee = $258.50. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

DocuSign Envelope ID: 37083C80-3B7D-4763-B7BA-D29CE4EFF8BD

Case# 2021-02234-0 - JUDGE:33 Received at County of Bucks Prothonotary on 04/23/2021 12:56 PM, Fee = $258.50. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

### 4.3   Insurance.

(a)     **BDL** shall obtain, provide, and maintain customary workers' compensation insurance coverage for **BDL's** employed or engaged personnel.  The limits of coverage and deductible amounts under such workers' compensation insurance shall be no less than $1,000,000 for each accident for bodily injury by accident, $1,000,000 for each employee for bodily injury by disease, and such insurance shall have a $1,000,000 policy limit for bodily injury by disease.

(b)     **BDL** shall obtain, provide, and maintain commercial general liability insurance and professional liability insurance with regard to the **Laboratory Services** provided under this **Agreement**, with limits of $1,000,000 per occurrence and $3,000,000 in the aggregate, and **BDL** shall obtain, provide, and maintain insurance coverage as necessary for the protection against loss or damage from fire or other casualty of **BDL** (all of the foregoing are collectively the "**Commercial Package**").  **BDL** shall cause the **Service Provider** to be insured by the **Commercial Package**.  Any changes to the limits of coverage and deductible amounts under the **Commercial Package** shall be mutually agreed-to by the **Parties** from time-to-time.

(c)     A written certificate or certificates of coverage for the insurance under this **Section 4.3** shall be provided to the **Service Provider** together with certification that such coverage may not be canceled without at least thirty (30) days' notice to the **Service Provider**.  **BDL** shall give the **Service Provider** notice of any material changes in the status of **BDL's** coverage.  **BDL** represents and warrants that **BDL** is not a nonsubscriber for purposes of workers' compensation insurance.

(d)     All insurance required by **BDL** under this **Section 4.3** shall contain provisions that **BDL's** insurer(s) shall have no right of subrogation against the **Service Provider**, it being the intent of the **Parties** that such insurance policies (other than workers' compensation insurance) shall protect each of **BDL** and the **Service Provider**.

(e)     Notwithstanding the provisions of this **Section 4.3** requiring **BDL** to name the **Service Provider** as an additional insured or as a protective co-insured, such provisions are **(i)** limited to coverage for claims, demands, suits, and actions resulting from **BDL's** obligations under this **Agreement**, **(ii)** not intended to derogate from the division of risk and indemnity agreements set out under this **Agreement**, and **(iii)** not intended to apply to workers' compensation insurance.

### 4.4   Payment for Laboratory Services.

(a)     In consideration of the **Laboratory Services** provided by the **Service Provider**, **BDL** shall pay the **Service Provider** in accordance with **Schedule 2** attached hereto (the "**Laboratory Services Flat Fee Payment Schedule**").

Resulting of all of the testing modalities listed above are provided with a comprehensive report.  All fees listed in **Schedule 2** are flat fees and are due and payable in accordance with the **Addendum to Reference Laboratory Agreement** ("**Addendum**") executed simultaneously and in conjunction with this **Agreement** regardless of whether or not **BDL** has been reimbursed for same.  Any failure by **BDL** to bill or collect for the **Laboratory Services** performed by **Service Provider** shall not relieve **BDL** of its obligation hereunder to pay **Service Provider** the service fees due under this Agreement and **BDL** hereby waives any liability or rights to withhold or recover payments made or owed to **Service Provider** for any recoupment or overpayment determination.

(b)     The **Parties** agree that the **Laboratory Services Fee** represents fair market value and is commercially reasonable for the **Laboratory Services** provided by the **Service Provider** under this **Agreement**.  Notwithstanding the foregoing or any other provision of this **Agreement**, at any time during the period beginning on the day that is One Hundred Eighty (180) days immediately following and continuing for a period for Thirty (30) days thereafter, if a **Party** believes that the fair market value of the **Laboratory Services** has changed in any material way, then such **Party** may notify the other

DocuSign Envelope ID: 37083C80-3B7D-4763-B7BA-D29CE4EFF8BD

**Party** that such **Party** believes such a change has occurred, and the **Parties** shall negotiate in good faith an adjustment to the **Laboratory Services Fee** so that the **Laboratory Services Fee** represents fair market value for the **Laboratory Services** of the **Service Provider** to be performed under this **Agreement**. The **Parties** agree to split equally the expense of obtaining a fair market value analysis from an independent **Third Person** valuation consultant experienced with providing fair market value opinions relating to health care services. Notwithstanding the foregoing, no adjustment under this __Section 4.4(b)__ shall be effective unless set forth in writing signed by both **Parties**, which writing shall be deemed an amendment to this **Agreement**.

(c)     Each **Party** agrees, within Fifteen (15) days following a request from the other **Party**, to provide the other **Party** any information needed to audit the amount due hereunder, which obligation shall be in addition to the audit rights provided by __Section 6__.

4.5     __Billing and Collection Assistance__. Without limiting the provisions of __Section 3.2__, **Service Provider** shall provide all assistance reasonably required by BDL in connection with **BDL's** provision of billing and collection services for the **Laboratory Services**, including (i) helping BDL furnish all information required to timely bill and collect all applicable fees for all **Laboratory Services** provided by the **Service Provider** for BDL under this **Agreement**, (ii) executing all documents necessary for collection of all fees from payors to BDL, and (iii) providing BDL with necessary access to **Service Provider** patient accounting system (if any).

4.6     __Compliance with Laws__. BDL shall comply with all laws and regulations applicable to BDL in performing **BDL's** obligations under this **Agreement**, including federal, state, and local laws and regulations and including laws and regulations affecting billing and reimbursement referrals, patient privacy, and confidentiality. BDL represents and covenants that it is and will maintain material compliance with the Clinical Laboratory Improvement Amendments of 1988 (42 U.S.C. 263a) ("CLIA"), 42 C.F.R. Part 493, applicable laws of states and other jurisdictions governing the operation of its clinical laboratory and BDL License will remain valid during the term of this **Agreement**. The **Service Provider** will assist BDL with respect to compliance with all such applicable laws and regulation with respect to the laboratory operations, including billing and collections.

5.     __Quality Assurance__. The **Parties** shall work together to promote continuous quality improvement with respect to the **Laboratory Services**.

6.     __Audits__. Each **Party** shall keep clear and complete files with all information the other **Party** might reasonably require to verify compliance with this **Agreement**, including information relating to all financial and transactional aspects of this **Agreement**.

7.     __Term and Termination__.

7.1     __Term__. The term of this **Agreement** shall commence on the **Effective Date** and shall remain in effect for One (1) year (the "__Initial Term__"), unless sooner terminated. Following the expiration of the **Initial Term**, this **Agreement** shall automatically renew for additional One (1) year terms ("__Renewal Term__"), unless either **Party** provides the other **Party** with at least Ninety (90) days' prior written notice of such **Party's** intent not to renew this **Agreement** at the end of the **Initial Term** or then-current **Renewal Term** (as applicable). The **Initial Term** and all **Renewal Terms** are collectively the "__Term__."

7.2     __Termination__.

(a)     Either **Party** may terminate this **Agreement** if the other **Party** materially breaches this **Agreement** and fails to cure such material breach within Thirty (30) days following receipt of written notice from the non-breaching **Party** of such material breach; provided, however, that the **Service Provider** may terminate this **Agreement** within Five (5) days following **BDL's** receipt of notice of **BDL's** material breach of any of **BDL's** payment obligations pursuant to __Section 4.4__ if BDL has not cured such breach within such Five (5) day period.

Case# 2021-02234-0 - JUDGE:33 Received at County of Bucks Prothonotary on 04/23/2021 12:56 PM, Fee = $258.50. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

DocuSign Envelope ID: 37083C80-3B7D-4763-B7BA-D29CE4EFF8BD

Case# 2021-02234-0 - JUDGE:33 Received at County of Bucks Prothonotary on 04/23/2021 12:56 PM, Fee = $258.50. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

**(b)** The **Service Provider** may immediately terminate this **Agreement** upon **(I)** the termination, limitation, or restriction on any **BDL License**; **(ii)** upon the closure of **BDL**; **(iii)** the dissolution of **BDL**; or **(iv)** if **BDL** becomes insolvent or seeks protection under any bankruptcy, receivership, trust deed, creditors arrangement, composition or comparable proceedings, of if any such proceeding is instituted against **BDL**.

**(c)** **Service Provider** or **BDL** may immediately terminate this **Agreement** upon the termination, limitation, or restriction on any **Laboratory License** to such an extent that the **Service Provider** cannot provide the **Laboratory Services** as required under this **Agreement**.

**(d)** Either **Party** may terminate this **Agreement** upon Thirty (30) days' written notice to the other **Party** for any reason or no reason at all.

**(e)** If federal, state, or local law or regulation currently existing or hereinafter enacted, or any final or non-appealable construction or interpretation of such law or regulation (whether federal, state, or local) or enforcement of such laws or regulations hereinafter occurs, makes performance of this **Agreement** impossible or illegal, the **Parties** mutually agree to enter into a modification of this **Agreement** to make substantial performance of this **Agreement** possible or legal. However, should the **Parties** be unable to agree upon an appropriate modification to comply with such requirements following Thirty (30) days of good faith negotiations, any **Party** may give written notice to the other **Party** to immediately terminate this **Agreement**. Notwithstanding the foregoing, nothing in this **Section 7.2(e)** shall affect the **Service Provider** right to terminate this **Agreement** as otherwise provided in this **Agreement**.

**7.3** **Effect of Termination**. If this **Agreement** terminates prior to the first anniversary of the **Effective Date**, then the **Parties** agree not to contract with each other for the same or similar services during the remainder of such one-year period.

**7.4** **Post-Collection Period Fee**. Following the expiration of the **Collection Period**, **BDL** shall continue to comply with **Section 4.4** with respect to the **Laboratory Services Flat Fee Payment Schedule** relating to the **Collection Period** (including payment, as determined in accordance with **Section 4.4**, of the applicable **Flat Fee Payment Schedule** that is billed or received following such expiration but relates to the **Collection Period**). This obligation shall continue indefinitely following the expiration of the **Collection Period** and the termination of this **Agreement**.

**8.** **Non-Disclosure**.

**8.1** **Exception**. **Confidential Information** shall not include any information of the **Disclosing Party** that **(i)** is generally available to the public other than as a result of an improper disclosure by the **Recipient**, **(ii)** becomes available to the **Recipient** on a non-confidential basis from a source (other than the **Disclosing Party**) which is not known by the **Recipient** to be prohibited from disclosing such information by a legal, contractual, or fiduciary obligation to the **Disclosing Party**, **(iii)** is already known by the **Recipient** with no non-disclosure obligation, **(iv)** is independently developed by the **Recipient** without use of, or reference to, the **Disclosing Party's Confidential Information**, or **(v)** is approved for release by written authorization from the **Disclosing Party**.

**8.2** **Restrictions**. A **Recipient** shall never copy, use, or disclose any **Confidential Information** of the **Disclosing Party** in any manner other than by copying or using such **Confidential Information** as contemplated by this **Agreement** or by disclosing such **Confidential Information** as follows:

**(a)** To the employees and contractors of the **Recipient** who have a need to know such **Confidential Information** as contemplated by this **Agreement**;

**(b)** To the officers, directors, managers, members, stockholders, employees, attorneys, accountants, consultants, advisors, sources of financing, and other agents of the **Recipient** who

DocuSign Envelope ID: 37083C80-3B7D-4763-B7BA-D29CE4EFF8BD

are required to have access to such **Confidential Information** in order to assist the **Recipient** in performing the **Recipient's** obligations to the **Disclosing Party**; or

(c)     As required by operation of law, provided that the **Recipient** has promptly notified the **Disclosing Party** of any legal process requiring production of such **Confidential Information** prior (where possible) to compliance with such process and has taken all reasonable precautions, including a protective order if so requested by (and at the expense of) the **Disclosing Party**, to ensure confidential treatment of any such **Confidential Information** so disclosed.

**8.3**     Degree of Care.  The **Recipient** shall treat the **Confidential Information** of the **Disclosing Party** with the same degree of care as the **Recipient** accords to the **Recipient's** own **Confidential Information**, but in no case less than commercially reasonable care.

**8.4**     Notice.  The **Recipient** shall promptly advise the **Disclosing Party** if the **Recipient** learns of any unauthorized use or disclosure of the **Confidential Information** of the **Disclosing Party**. Each **Party** shall continue to own all such **Party's Confidential Information**.

**8.5**     HIPAA.  As providers of patient healthcare services, the **Parties** shall comply with all applicable federal, state, and local laws and regulations relating to the confidentiality and security of patient information (including, but not limited to, the Health Insurance Portability and Accountability Act of 1996 ("**HIPAA**"), the Health Information Technology for Economic and Clinical Health ("**HITECH**") Act, and their related regulations).

**9.**     Non-Solicitation.

**9.1**     By the Service Provider.  The **Service Provider** agrees and covenants that during the **Term** of this **Agreement** and for a period of five (5) years following the termination of this **Agreement** for any reason, the **Service Provider** shall not, either as an owner, employer, agent, independent contractor, employee, or through an employer, partnership, affiliate, subsidiary, or otherwise, unless approved by BDL, directly or indirectly, **(i)** solicit for employment, offer employment to, or employ any **Person** who is or was employed by **BDL** or any of the **Affiliates** of BDL at any time within the (6) six-month period immediately preceding such solicitation, offering, or employment or in any way interfere with the relationship between any such employee and **BDL** or any of the **Affiliates** of BDL, or **(ii)** request, induce, or attempt to induce any client, supplier, licensee, health care provider (including any physician), or other business relation of **BDL** or any of the **Affiliates** of BDL (each a "**BDL's Business Relation**") to withdraw, curtail, cancel, alter, or otherwise cease such **BDL Business Relation's** business with **BDL** or any of the **Affiliates** of BDL or in any way interfere with the relationship between any such **BDL's Business Relation** and **BDL** or any of the **Affiliates** of BDL; provided that this provision is not intended to restrict any physician's right to perform medically necessary services.

**9.2**     By BDL.  BDL agrees and covenants that during the Term of this **Agreement** and for a period of five (5) years following the termination of this **Agreement** for any reason, **BDL** shall not, either as an owner, employer, agent, independent contractor, employee, or through an employer, partnership, affiliate, subsidiary, or otherwise, unless approved by the **Service Provider**, directly or indirectly, **(i)** solicit for employment, offer employment to, or employ any **Person** who is or was employed by the **Service Provider** or any of the **Service Provider Affiliates** at any time within the (6) six-month period immediately preceding such solicitation, offering, or employment or in any way interfere with the relationship between any such employee and the **Service Provider** or any of the **Service Provider Affiliates**, or **(ii)** request, induce, or attempt to induce any client, supplier, licensee, health care provider (including any physician), or other business relation of the **Service Provider** or any of the **Service Provider Affiliates** (each a "**Genesis Business Relation**") to withdraw, curtail, cancel, alter, or otherwise cease such BDL **Business Relation's** business with the **Service Provider** or any of the **Service Provider Affiliates** or in any way interfere with the relationship between any such **Service Provider Business Relation** and the **Service Provider** or any of the **Service Provider Affiliates**; provided that this provision is not intended to restrict any physician's right to perform medically necessary services.

DocuSign Envelope ID: 37083C80-3B7D-4763-B7BA-D29CE4EFF8BD

## 10.    Indemnification.

**10.1    Scope**.  Each Party (the "**Indemnifying Party**") shall indemnify, hold harmless, and defend the other **Party**, the other **Party's Affiliates**, and the officers, directors, employees, agents, successors, and permitted assigns of the other **Party** and the other **Party's Affiliates** (collectively, the "**Indemnified Party**") against any and all losses, damages, liabilities, deficiencies, claims, actions, judgments, settlements, interest, awards, penalties, fines, costs, or expenses of whatever kind, including attorneys' fees and costs, that are incurred by the **Indemnified Party** (each, a "**Loss**" and collectively, "**Losses**"), arising out of any third-party claim alleging (an "**Indemnified Claim**"):

(a)    Any wrongful, negligent or more culpable act or omission (including professional malpractice) of the **Indemnifying Party**;

(b)    Any bodily injury, death of any person, or damage to real or tangible personal property caused by any negligent or more culpable act or omission of the **Indemnifying Party**; or

(c)    Any failure by the **Indemnifying Party** or the **Indemnifying Party's** agents to comply with **Third Person Payor Requirements** applicable to the **Laboratory Services** provided hereunder; provided, however, that any obligations of the **Indemnifying Party** under this **Section 10.1(c)** shall be subject to **Section 10.5**.   For the purposes of this **Section 10**, "**Third Person Payor Requirements**" shall mean the terms and conditions of any **Payor Agreement** related to any payment or reimbursement, including a payment from a patient or a **Third Person**, received, in whole or in part, by **BDL** and/or the **Service Provider** with respect to **Test Orders** processed and filled by the **Service Provider** under this **Agreement**.

**10.2    Indemnified Party's Control of Defense**.  Notwithstanding anything to the contrary in **Section 10.1**, the **Indemnified Party** is entitled to defend an **Indemnified Claim** with counsel of the **Indemnified Party's** own choosing and without the participation of the **Indemnifying Party** if:

(a)    The **Indemnifying Party** fails to immediately assume the defense or refuses to defend the **Indemnified Claim**;

(b)    The **Indemnified Claim** seeks only an injunction or other equitable relief against the **Indemnified Party**; or

(c)    The **Indemnified Party** reasonably believes:

(i)    That there are one or more legal or equitable defenses available to the **Indemnified Party** that are different from, or in addition to, those available to the **Indemnifying Party**;

(ii)    Counsel for the **Indemnifying Party** could not adequately represent the interest of the **Indemnified Party** because such interest could be in conflict with those of the **Indemnifying Party**; or

(iii)    Such action or proceeding involves, or could have a material effect on, any material matter beyond the scope of the indemnification or defense obligations of the **Indemnifying Party**.

**10.3    Additional Obligations**.  If the **Indemnified Party** assumes control of the defense pursuant to **Section 10.2**, the **Indemnifying Party** shall:

(a)    Reimburse the **Indemnified Party** promptly (within fifteen (15) days following submission of bills) and periodically for the costs properly incurred in defending against the **Indemnified Claim** (including attorneys' fees and expenses); and

Case# 2021-02234-0 - JUDGE:33 Received at County of Bucks Prothonotary on 04/23/2021 12:56 PM, Fee = $258.50. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania. Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

DocuSign Envelope ID: 37083C80-3B7D-4763-B7BA-D29CE4EFF8BD

(b)     Remain responsible to the **Indemnified Party** for any **Losses** indemnified under **Section 10.1**, subject to the limitations set forth in **Section 10.5**.

**10.4**     **Settlement**.  The **Indemnifying Party** shall give prompt written notice to the **Indemnified Party** of any proposed settlement of an **Indemnified Claim**.  The **Indemnifying Party** may not, without the prior written consent of the **Indemnified Party**, settle or compromise any claim or consent to the entry of any judgment with respect to which indemnification is being sought under this **Agreement** unless such settlement, compromise, or consent:

(a)     Includes an unconditional release of the **Indemnified Party** from all liability arising out of such claim;

(b)     Does not contain any admission or statement suggesting any wrongdoing or liability on behalf of the **Indemnified Party**; and

(c)     Does not contain any equitable order, judgment, or term (other than the fact of payment or the amount of such payment) that in any manner affects, restrains, or interferes with the business of the **Indemnified Party** or any of the **Indemnified Party's Affiliates**.

**10.5**     **Apportionment**.

(a)     The **Indemnifying Party's** obligations under **Section 10.1(c)** shall be limited to the **Indemnifying Party's** pro rata portion of any refunds, offsets, or recoupments due to a **Third Person** payor or a patient for **Laboratory Services** provided by the **Service Provider** under this **Agreement**, and the **Indemnifying Party's** pro rata portion of reasonable attorneys' fees and costs incurred by the **Indemnified Party** related to such refunds, offsets, or recoupments.

(b)     Notwithstanding anything contained in **Section 10.5(a)** to the contrary, the **Indemnifying Party's** obligations under **Section 10.1(c)** shall not be subject to the limitation set forth in **Section 10.5(a)** for any and all attorneys' fees and costs, penalties and damages (excluding, however, if applicable, the actual amount of any refunds, offsets, or recoupments of reimbursement for **Laboratory Services**, which shall remain subject to **Section 10.5(a)** if such **Indemnifying Party's** obligation under **Section 10.1(c)** is the result of the **Indemnifying Party's** wrongful, negligent, or more culpable act or omission.

**11.**     **Compliance**.  The **Parties** each represent that they have structured this **Agreement** to comply with all applicable laws, including any applicable standards for clinical laboratories, such as the Clinical Laboratory Improvement Amendments ("**CLIA**"), the Commission on Laboratory Accreditation ("**COLA**") and any applicable U.S. Food and Drug Administration ("**FDA**") regulations, and any regulations specific for tissue banking, if applicable to the **Laboratory Services**.  It is not a purpose of this **Agreement** to induce the referral of patients.  The **Parties** acknowledge that there is no obligation or compensation under this **Agreement** or any agreement between the **Parties** that requires the **Service Provider** to refer, recommend, or arrange for any items or services paid for by any Governmental Payor.

**12.**     **Disclaimers and Limitations**.

**12.1**     **Disclaimers**.  EXCEPT AS PROVIDED IN **SECTION 12.3**, NEITHER PARTY MAKES ANY WARRANTY, EXPRESS NOR IMPLIED, INCLUDING ANY WARRANTY OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE.

**12.2**     **Limitations**.  IN NO EVENT SHALL A **PARTY** BE LIABLE FOR INDIRECT, SPECIAL, INCIDENTAL, OR CONSEQUENTIAL DAMAGES, LOSS OF PROFITS, LOSS OF USE OR DATA, OR INTERRUPTION OF BUSINESS, WHETHER SUCH ALLEGED DAMAGES ARE LABELED IN TORT, CONTRACT, OR INDEMNITY, EVEN IF SUCH **PARTY** HAS BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGES; PROVIDED, HOWEVER, THAT THIS LIMITATION OF LIABILITY

Case# 2021-02234-0 - JUDGE:33 Received at County of Bucks Prothonotary on 04/23/2021 12:56 PM, Fee = $268.50. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

DocuSign Envelope ID: 37083C80-3B7D-4763-B7BA-D29CE4EFF8BD

Case# 2021-02234-0 - JUDGE.33 Received at County of Bucks Prothonotary on 04/23/2021 12:56 PM, Fee = $258.50. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

WILL NOT APPLY WITH RESPECT TO INDEMNIFICATION FOR ANY THIRD-PARTY CLAIM. THIS **SECTION 12.2** SHALL NOT APPLY TO **(i) SERVICE PROVIDER'S** FAILURE TO COMPLY WITH **SECTION 2 OR 12.3** OR **(ii)** ANY **PARTY'S** FAILURE TO COMPLY WITH **SECTION 8, 9, or 10**.

**12.3    Authority**. Each **Party** represents and warrants the following: Such **Party** has all requisite power and authority to execute and deliver this **Agreement**, to perform such **Party's** obligations under this **Agreement**, to consummate the transactions contemplated by this **Agreement**, and to grant the rights granted by such **Party** pursuant to this **Agreement**. The execution, delivery, and performance of this **Agreement** by such **Party** and the consummation by such **Party** of the transactions contemplated by this **Agreement** have been duly and validly authorized by all necessary action, and no other proceedings on the part of such **Party** are necessary to authorize this **Agreement** or to consummate the transactions so contemplated. This **Agreement** constitutes a valid and legally binding obligation of such **Party**, enforceable against such **Party** in accordance with its terms, subject to applicable bankruptcy, insolvency, reorganization, moratorium, and similar laws affecting creditors' rights and remedies generally, subject, as to enforceability, to general principles of equity, including principles of commercial reasonableness, good faith, and fair dealing (regardless of whether enforcement is sought in a proceeding at law or in equity). Neither **Party** has entered into any agreement or arrangement in contravention of the terms and conditions of this **Agreement**. The execution and performance of this **Agreement** shall not result in a violation or breach of any agreement or other instrument under which such **Party** is bound or to which any of the assets of such **Party** are subject or violate any applicable law or regulation or any judgment or order of any court or governmental agency. The **Service Provider** has, and shall maintain throughout the **Term**, all of the necessary qualifications, including certificates, permits, registrations, and/or licenses, pursuant to the applicable federal, state and local law, to perform its obligations under this **Agreement**, and the **Service Provider** has obtained all required consents, approvals and authorizations from all governmental authorities and other persons that must be obtained by the **Service Provider** in connection with this **Agreement**.

**13.    General**.

**13.1    Change of Law**. If at any time while this **Agreement** is in effect, a governmental law or regulation is adopted or promulgated that prohibits, limits or in any way materially affects either Party's rights or obligations hereunder, either Party may give the other Party notice of its intent to amend this **Agreement** in a fashion that is equitable to each Party considering such restriction, prohibition, limitation or change, and the Parties shall negotiate in good faith to accomplish such amendment. If, after 30 days, agreement on the amendment is not reached, the either Party shall have the right to immediately terminate this **Agreement** upon written notice to the other Party.

**13.2    Equitable Relief**. A breach or threatened breach of **Section 2, 8, or 9** by a **Party** may cause irreparable harm and injury to the other **Party** for which money damages are inadequate. In the event of such breach or threatened breach, such other **Party** may be entitled to seek injunctive relief, without the requirement of posting bond or any other security, in addition to all other available remedies.

**13.3    Use of Name, Trade Mark, and Service Mark**. BDL may list the **Service Provider** as the provider of **Laboratory Services** in material provided to patients (the "**Patient Material**"). BDL may place the **Service Provider** trade mark and service mark, as provided by the **Service Provider**, in the **Patient Material**. Any other use of the **Service Provider** name, trademark, or service mark in written material must be approved in advance, in writing by the **Service Provider**. Following submission of proposed advertising or promotional material to **Service Provider** for review, **BDL** may use **Service Provider** name in any advertising or promotional material with the prior written consent of **Service Provider**, which shall not be unreasonably withheld, delayed, or conditioned. Each **Party** agrees that upon termination of this **Agreement** any use of the other **Party's** name, trademark, or service mark with respect to this **Agreement** shall immediately cease.

**13.4    Amendments**. This **Agreement** may be amended only pursuant to a written agreement between the **Parties**.

DocuSign Envelope ID: 37083C80-3B7D-4763-B7BA-D29CE4EFF8BD

**13.5** **Binding Effect**. This **Agreement** shall be binding upon, inure to the benefit of, and be enforceable by, the **Parties** and the **Parties'** respective successors and permitted assigns.

**13.6** **Counterparts**. This **Agreement** may be executed simultaneously in one or more counterparts, each of which shall be deemed an original but all of which together shall constitute one and the same instrument. Faxed or digitally scanned copies of manually executed signature pages to this **Agreement** shall be fully binding and enforceable without the need for delivery of the original manually executed signature page.

**13.7** **Remedies Cumulative**. All rights and remedies of the **Parties** under this **Agreement** shall be cumulative, and no such right or remedy shall exclude any other right or remedy allowed by law or equity.

**13.8** **Severability**. If any provision of this **Agreement** is held to be illegal, invalid, or unenforceable under present or future laws, such provision shall be fully severable, and this **Agreement** shall be construed and enforced as if such illegal, invalid, or unenforceable provision never comprised a part of this **Agreement**; and the remaining provisions of this **Agreement** shall remain in full force and effect and shall not be affected by the illegal, invalid, or unenforceable provision or by its severance from this **Agreement**. Furthermore, in lieu of such illegal, invalid, or unenforceable provision, there shall be added automatically as part of this **Agreement** a provision as similar in its terms to such illegal, invalid, or unenforceable provision as may be possible and be legal, valid, and enforceable.

**13.9** **Notices**.

    **(a)** Any notices or communications to be given under this **Agreement** by either **Party** to the other **Party** shall be deemed to have been duly given if given in writing and **(1)** personally delivered, **(2)** sent by nationally recognized overnight courier, or **(3)** sent by certified mail, return receipt requested, in each case, at the address for such other **Party** set forth below:

        **(i)** <u>If to the Service Provider, addressed to:</u>

**Abira Medical Laboratories, LLC d/b/a Genesis Diagnostics**
900 Town Center Drive, Suite H50
Langhorne, Pennsylvania 19047
Attention:    Elliott H. Vernon, Esq. | Exec. V.P.
                 Chief Compliance Officer
evernonesq@genesisdx.com

<u>With a copy to, which shall not constitute notice:</u>

**Greenberg Traurig, LLP**
1000 Louisiana Street, Suite 1700
Houston, Texas 77002
Attention:    Charles C. Dunham IV, Esq.
                 Shareholder
dunhamc@gtlaw.com

Case# 2021-02234-0 - JUDGE:33 Received at County of Bucks Prothonotary on 04/23/2021 12:56 PM, Fee = $258.50. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

DocuSign Envelope ID: 37083C80-3B7D-4763-B7BA-D29CE4EFF8BD

Case# 2021-02234-0 - JUDGE33 Received at County of Bucks Prothonotary on 04/23/2021 12:56 PM, Fee = $268.50. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

(ii)   **If to BDL, addressed to:**

**BioDiagnostic Labs Inc.**
2380 East 22nd Street
Brooklyn, New York 11229
Attention:        Gershon Sontag
                         Owner
gsontag@andilab.com



**AND**

**BioDiagnostic Labs Inc.**
2380 East 22nd Street
Brooklyn, New York 11229
Attention:        Nathan Sontag
                         Owner
nsontag@andilab.com

(b)        Notices shall be deemed communicated as of actual receipt (or refusal) by the addressee.  Any **Party** may change such **Party's** address for notice under this **Agreement** by giving prior written notice to the other **Party** of such change in the manner provided in this **Section 13.8**.

13.10    **Governing Law**.  This **Agreement** shall be governed by, and construed and enforced in accordance with, the laws of the State of New Jersey (without regard to New Jersey conflicts of laws rules).

13.11    **Arbitration**.

(a)        All disputes (each, a "**Dispute**") arising out of, or in connection with, this **Agreement**, including any question regarding this **Agreement's** existence, validity (including the existence of authority of the persons executing this **Agreement**), or termination, shall be finally settled (including the award of equitable remedies) by binding arbitration by a single arbitrator administered by the American Arbitration Association ("**AAA**") under the AAA's Commercial Arbitration Rules and AAA's Supplementary Procedures for large, Complex Disputes then in effect, based on the substantive Laws of the State of New Jersey and the Federal Arbitration Act (Title 9, U.S. Code) and shall be conducted in New Jersey.

(b)        The arbitrator shall be a neutral and impartial lawyer or retired judge with no prior working relationship with any **Party** or with legal counsel to any **Party** and who has been practicing law for at least fifteen (15) years in business and commercial matters with experience in business acquisitions and with healthcare industry matters and healthcare laws.  Within Thirty (30) days following receipt of the commencement of the arbitration process with AAA, the AAA shall submit to each **Party** a list of at least three potential arbitrators meeting the qualifications noted above.  If the **Parties** cannot agree on a single arbitrator from the list submitted by AAA within Sixty (60) days after the commencement of the arbitration process with AAA, then AAA shall select a single arbitrator from such list no later than Ninety (90) days after such commencement.

(c)        The arbitration hearing for a **Dispute** (the "**Hearing**") shall take place within six (6) months after the date on which the arbitrator for such **Dispute** is selected.  The arbitrator shall issue to each **Party** the arbitrator's decision in writing within Thirty (30) days following the conclusion of the **Hearing**.

(d)        Judgment upon the award rendered in the arbitration may be entered in any court having jurisdiction thereof.  Nothing herein shall be construed to limit the right of any **Party** to seek injunctive relief pursuant to the provisions of **Section 13.11** in the federal or state courts located in, in lieu of or in addition to such **Party's** right to pursue arbitration of the matter, nor shall this **Section 13.10**

DocuSign Envelope ID: 37083C80-3B7D-4763-B7BA-D29CE4EFF88D

be construed to limit the right of any **Indemnified Party** to enforce through court action any unsatisfied judgment entered with respect to an arbitration award hereunder. The non-prevailing **Party** in any such arbitration or court action shall reimburse to the prevailing party all of the prevailing **Party's** reasonable costs and expenses incurred in connection with such dispute (including reasonable attorneys' fees and expenses, accountants' fees and expenses and expert witness fees and expenses).

   **13.12**  <u>**Equitable Relief**</u>. Either **Party** may proceed to applicable state or federal courts for the purpose of obtaining equitable relief permitted by this **Agreement**, without the requirement of posting bond or any other security, including temporary restraining orders, temporary injunctions, or specific performance.

   **13.13**  <u>**Expenses**</u>. Each **Party** shall pay all of such **Party's** own expenses relating to the negotiation and preparation of this **Agreement**, including the fees and expenses of such **Party's** counsel.

   **13.14**  <u>**No Third Person Beneficiaries**</u>. Except as expressly set forth in this **Agreement**, this **Agreement** does not create, and shall not be construed as creating, any right enforceable by any person not a **Party**.

   **13.15**  <u>**Assignment**</u>. Neither **Party** may assign this **Agreement** without the other **Party's** prior, express, and written consent, which consent by such other **Party** may not be unreasonably withheld, delayed, or conditioned; provided, however, that **(i)** either **Party** may assign this **Agreement** to any entity that acquires all or substantially all of such **Party's** assets or such **Party's** business that is the subject of this **Agreement** or **(ii)** upon written notice from the **Service Provider** to BDL, the **Service Provider** may assign this **Agreement** to any entity that is an **Affiliate** of the **Service Provider**.

   **13.16**  <u>**Entire Agreement**</u>. This **Agreement** (including the Exhibits) **(i)** embodies the entire agreement and understanding between the **Parties** relating to the subject matter of this **Agreement** and **(ii)** supersedes all prior agreements and understandings relating to the subject matter of this **Agreement**.

   **13.17**  <u>**Waivers**</u>. No waiver by a **Party** of any provision or breach of this **Agreement** shall be effective unless in writing, and no waiver in any one or more instances shall be deemed to be a further or continuing waiver in other any instance.

   **13.18**  <u>**Drafting Party**</u>. The **Parties** acknowledge and agree that **(i)** each **Party** and such **Party's** counsel have reviewed and revised this **Agreement** and **(ii)** no single **Party** bears sole responsibility for the drafting or preparation of this **Agreement**. Consequently, no rule of construction to the effect that ambiguities are to be resolved against the drafting **Party** should be employed in the interpretation of this **Agreement**.

   **13.19**  <u>**Interpretation**</u>. In the interpretation of this **Agreement**, except where the context otherwise requires, **(i)** "including," "include," or "such as" does not denote or imply any limitation, **(ii)** "or" has the inclusive meaning "and/or," **(iii)** "and/or" means "or" and is used for emphasis only, **(iv)** "<u>**$**</u>" refers to United States dollars, **(v)** the singular includes the plural, and vice versa, and each gender includes each other gender, **(vi)** captions or headings are only for reference and are not to be considered in interpreting this **Agreement**, **(vii)** references to any federal, state, local, or foreign statute or law shall be deemed also to refer to all rules and regulations promulgated thereunder, **(viii)** "<u>**Section**</u>" refers to a section of this **Agreement**, unless otherwise stated in this **Agreement**, **(ix)** "<u>**Exhibit**</u>" refers to an exhibit to this **Agreement** (which is incorporated by reference), unless otherwise stated in this **Agreement**, **(x)** all references to times are times in New Jersey, **(xi)** "<u>**Termination**</u>" (or any grammatical variation thereof) means termination of this **Agreement** (for any reason or no reason) and includes any non-renewal or expiration of this **Agreement**, **(xii)** "relating to," "related to," and "relates to" (or any grammatical variation thereof) mean consisting of, referring to, attributable to, reflecting, supporting, evidencing, prepared in connection with, used in preparation for, or being in any way legally, logically, or factually connected with the matter discussed, and **(xiii)** "<u>**Day**</u>" refers to a calendar day unless expressly identified as a **Business**

Case# 2021-02234-0 - JUDGE:33 Received at County of Bucks Prothonotary on 04/23/2021 12:56 PM, Fee = $258.50. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

DocuSign Envelope ID: 37083C80-3B7D-4763-B7BA-D29CE4EFF8BD

Case# 2021-02234-0 - JUDGE:33 Received at County of Bucks Prothonotary on 04/23/2021 12:56 PM, Fee = $258.50. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

**Day**.  Unless otherwise expressly provided in this **Agreement**, **(a)** a reference in this **Agreement** to a particular statute, law, rule, or regulation is a reference to such statute, law, rule, or regulation as such statute, law, rule, or regulation is in force from time to time taking into account any and all amendments and re-enactments of such statute, law, rule, or regulation and **(b)** a reference to a particular agreement is a reference to such agreement as such agreement is in force from time to time taking into account any and all amendments and restatements of such agreement.

   **13.20** <u>Relationship of Parties</u>.  The **Service Provider** is an independent contractor. Nothing in this **Agreement** shall create or be deemed to create the relationship of employer/employee, partners, joint ventures, or principal-agent between the **Parties**.  Neither **Party** shall have any authority to assume or create any obligation or responsibility whatsoever, express or implied, on behalf or in the name of the other **Party** or to bind the other **Party** in any manner whatsoever, nor shall either **Party** make any representation, warranty, covenant, agreement, or commitment on behalf of the other **Party**.

   **13.21** <u>Force Majeure</u>.  The obligations of the **Service Provider** under this **Agreement** with respect to any **Laboratory Service** shall be suspended during the period and to the extent that the **Service Provider** is prevented or hindered from providing such **Laboratory Service** due to any of the following causes beyond each **Party's** reasonable control (such causes, "**Force Majeure Events**"): **(i)** acts of God, **(ii)** flood, fire, or explosion, **(iii)** war, invasion, riot, or other civil unrest, **(iv)** governmental order or law, **(v)** actions, embargoes, or blockades in effect on or after the date of this **Agreement**, **(vi)** action by any governmental authority, **(vii)** national or regional emergency, **(viii)** strikes, labor stoppages, or slowdowns or other industrial disturbances, **(ix)** shortage of adequate power or transportation facilities, or **(x)** any other event which is beyond the reasonable control of such Party.  The **Service Provider** shall not be liable for the non-performance or delay in performance of the **Service Provider** obligations under this **Agreement** when such failure is due to a **Force Majeure Event**.

   **13.22** <u>Survival</u>.  This <u>**Section 13.21**</u> and <u>**Sections 3.1(c), 4.4, 6, 7.3, 7.4, 8, 9, 10, and 12**</u> shall survive termination of this **Agreement**.

**[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]**

**[SIGNATURE PAGE FOLLOWS]**

DocuSign Envelope ID: 37083C80-3B7D-4763-B7BA-D29CE4EFF8BD

Case# 2021-02234-0 - JUDGE:33 Received at County of Bucks Prothonotary on 04/23/2021 12:56 PM, Fee = $258.50. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

The **Parties** have executed this **Agreement** to be effective as of the **Effective Date.**

**SERVICE PROVIDER:**
**Abira Medical Laboratories, LLC**
**d/b/a Genesis Diagnostics**
**a New Jersey Limited Liability Company**

*Elliott Vernon*

Elliott H. Vernon, Esq.
Executive V.P. | Chief Compliance Officer


**BDL:**
**BioDiagnostic Labs Inc.**
**A New York Corporation**

Gershon Sontag
Owner


**SIGNATURE PAGE - REFERENCE LABORATORY AGREEMENT (GENESIS and BDL)**

DocuSign Envelope ID: 37083C80-3B7D-4763-B7BA-D29CE4EFF8BD

Case# 2021-02234-0 - JUDGE:33 Received at County of Bucks Prothonotary on 04/23/2021 12:56 PM, Fee = $258.50. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

### Schedule 1

### SUBCONTRACTORS

### [INSERT AS APPLICABLE OR NOTE N/A]

DocuSign Envelope ID: 37083C80-3B7D-4763-B7BA-D29CE4EFF8BD



# GENESIS
### DIAGNOSTICS™

## SCHEDULE 2

## LABORATORY SERVICES FLAT FEE PAYMENT SCHEDULE

**Payment for Laboratory Services**

COVID-19                                                                                    **$45.00

**Pricing includes the cost of processing/resulting of the test as well as the report for same.  Genesis will supply kits necessary for COVID-19 testing.

Case# 2021-02234-0 - JUDGE:33 Received at County of Bucks Prothonotary on 04/23/2021 12:56 PM, Fee = $258.50. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

DocuSign Envelope ID: 37083C80-3B7D-4763-B7BA-D29CE4EFF8BD

**Exhibit A**

**TEST ORDERS**

**[See Attached]**

Case# 2021-02234-0 - JUDGE:33 Received at County of Bucks Prothonotary on 04/23/2021 12:56 PM, Fee = $258.50. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

Case# 2021-02234-0 - JUDGE:33 Received at County of Bucks Prothonotary on 04/23/2021 12:56 PM, Fee = $258.50. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

# EXHIBIT "2"

DocuSign Envelope ID: 37083C80-3B7D-4763-B7BA-D29CE4EFF8BD

Case# 2021-02234-0 - JUDGE:33 Received at County of Bucks Prothonotary on 04/23/2021 12:56 PM, Fee = $258.50. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

## ADDENDUM TO REFERENCE LABORATORY AGREEMENT

This Addendum to Reference Laboratory Agreement (this "**Addendum**") is made and entered into effective as of ___9/16/2020___, (the "**Effective Date**"), by and between **ABIRA MEDICAL LABORATORIES, LLC D/B/A GENESIS DIAGNOSTICS**, a New Jersey Limited Liability Company (the "**Service Provider**") and **BIODIAGNOSTIC LABS INC.**, a New York Corporation ("**BDL**"). The **Service Provider** and **BDL** are sometimes referred to in this **Agreement** individually as a "**Party**" and collectively as the "**Parties**."

**WHEREAS**, to facilitate payment for the testing modalities as set forth in the **Laboratory Services Flat Fee Payment Schedule** ("**Payment Schedule**") incorporated in and attached to the above-referenced **Reference Laboratory Agreement** as **Schedule 2**, the **Parties** agree as follows;

1. **Service Provider** shall invoice **BDL** for any specimens received and testing performed on a biweekly basis;

2. Upon **BDL's** receipt of each biweekly invoice from **Service Provider**, **BDL** shall immediately make the full payment due to **Service Provider** regardless of whether **BDL** has received payment for same;

3. This process will continue for the duration of this **Agreement**, at the sole discretion of the **Service Provider**.

The **Parties** have executed this **Addendum** to be effective as of the date hereof.

**SERVICE PROVIDER:**
**Abira Medical Laboratories, LLC d/b/a Genesis Diagnostics, a New Jersey Limited Liability Company**

By: _Elliott Vernon_
Elliott Vernon, Esq.
Title: Executive Vice President | Chief Compliance Officer

**BDL:**
**BioDiagnostic Labs Inc.**
**a New York Corporation**

By: _Gershon Sontag_
Title: Owner

Case# 2021-02234-0 - JUDGE:33 Received at County of Bucks Prothonotary on 04/23/2021 12:56 PM, Fee = $268.50. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

# EXHIBIT "3"

# Statement

**GENESIS**
D I A G N O S T I C S.

| Date |
|---|
| 3/23/2021 |

| To: |
|---|
| Biodiagnostics<br>2380 East 22nd Street<br>Brooklyn, New York 11229 |

Case# 2021-02234-0 - JUDGE.33 Received at County of Bucks Prothonotary on 04/23/2021 12:56 PM, Fee = $268.50. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

| | Amount Due | Amount Enc. |
|---|---|---|
| | $1,633,905.00 | |

| Date | Transaction | Amount | Balance |
|---|---|---|---|
| 12/31/2019 | Balance forward | | 0.00 |
| 09/30/2020 | INV #1264. Due 09/30/2020.<br>— Covid-19, 9,997 @ $45.00 = 449,865.00<br>— September Testing | 449,865.00 | 449,865.00 |
| 10/08/2020 | PMT | -100,000.00 | 349,865.00 |
| 10/13/2020 | PMT | -50,000.00 | 299,865.00 |
| 10/19/2020 | PMT | -100,000.00 | 199,865.00 |
| 10/22/2020 | INV #1302. Due 10/27/2020.<br>— Covid-19, 7,443 @ $45.00 = 334,935.00<br>— Covid 19 testing - Invoice 10/01/2020 to 10/15/2020 | 334,935.00 | 534,800.00 |
| 10/31/2020 | INV #1350. Due 10/31/2020.<br>— Covid-19, 10,241 @ $45.00 = 460,845.00<br>— Covid 19 testing - Invoice 10/15/2020 to 10/31/2020 | 460,845.00 | 995,645.00 |
| 11/06/2020 | PMT | -135,000.00 | 860,645.00 |
| 11/06/2020 | PMT | -49,000.00 | 811,645.00 |
| 11/06/2020 | PMT 7 | -28,000.00 | 783,645.00 |
| 11/06/2020 | PMT 7000*8 +4000 | -60,000.00 | 723,645.00 |
| 11/06/2020 | PMT | -5,000.00 | 718,645.00 |
| 11/06/2020 | PMT | -45,000.00 | 673,645.00 |
| 11/27/2020 | PMT | -49,000.00 | 624,645.00 |
| 11/27/2020 | PMT | -50,000.00 | 574,645.00 |
| 11/27/2020 | PMT | -40,000.00 | 534,645.00 |
| 11/27/2020 | PMT | -50,000.00 | 484,645.00 |
| 11/27/2020 | PMT | -50,000.00 | 434,645.00 |
| 12/01/2020 | INV #1548. Due 12/01/2020.<br>--- Covid-19, 10,659 @ $45.00 = 479,655.00<br>--- Covid Testing November | 479,655.00 | 914,300.00 |
| 12/01/2020 | PMT | -40,000.00 | 874,300.00 |
| 12/07/2020 | PMT | -60,000.00 | 814,300.00 |
| 12/14/2020 | PMT | -50,000.00 | 764,300.00 |
| 12/18/2020 | PMT | -50,000.00 | 714,300.00 |
| 12/23/2020 | PMT #cc. | -50,000.00 | 664,300.00 |
| 12/28/2020 | PMT | -50,000.00 | 614,300.00 |

| CURRENT | 1-30 DAYS PAST DUE | 31-60 DAYS PAST DUE | 61-90 DAYS PAST DUE | OVER 90 DAYS PAST DUE | Amount Due |
|---|---|---|---|---|---|
| 0.00 | 485,415.00 | 575,775.00 | 422,415.00 | 150,300.00 | $1,633,905.00 |

Case# 2021-02334-0 - JUDGE.33 Received at County of Bucks Prothonotary on 04/23/2021 12:56 PM, Fee = $268.50. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

# Statement

**GENESIS.**
D I A G N O S T I C S

| Date |
|---|
| 3/23/2021 |

| To: |
|---|
| Biodiagnostics<br>2380 East 22nd Street<br>Brooklyn, New York 11229 |

| | Amount Due | Amount Enc. |
|---|---|---|
| | $1,633,905.00 | |

| Date | Transaction | Amount | Balance |
|---|---|---|---|
| 12/31/2020 | INV #1473. Due 12/31/2020.<br>— Covid-19, 9,387 @ $45.00 = 422,415.00<br>— Service Dates 12.1.2020-12.31.2020 | 422,415.00 | 1,036,715.00 |
| 01/04/2021 | PMT | -75,000.00 | 961,715.00 |
| 01/14/2021 | PMT #Applied to #1350. Payment made 1/22/21 for $70k via YF's direction (CL) | -75,000.00 | 886,715.00 |
| 01/19/2021 | PMT | -50,000.00 | 836,715.00 |
| 01/31/2021 | INV #1665. Due 01/31/2021.<br>— Covid-19, 12,795 @ $45.00 = 575,775.00<br>— Service Dates 01.1.2021-01.27.2021 | 575,775.00 | 1,412,490.00 |
| 02/09/2021 | PMT #cc. | -50,000.00 | 1,362,490.00 |
| 02/18/2021 | PMT #cc. | -59,000.00 | 1,303,490.00 |
| 02/28/2021 | INV #1780. Due 02/28/2021.<br>— Covid-19, 9,273 @ $45.00 = 417,285.00<br>— February Testing | 417,285.00 | 1,720,775.00 |
| 03/01/2021 | PMT | -25,000.00 | 1,695,775.00 |
| 03/01/2021 | PMT | -30,000.00 | 1,665,775.00 |
| 03/08/2021 | PMT #cc. | -50,000.00 | 1,615,775.00 |
| 03/17/2021 | INV #1778. Due 03/17/2021.<br>— Covid-19, 1,514 @ $45.00 = 68,130.00<br>— March Resulted | 68,130.00 | 1,683,905.00 |
| 03/22/2021 | PMT | -50,000.00 | 1,633,905.00 |

| CURRENT | 1-30 DAYS PAST DUE | 31-60 DAYS PAST DUE | 61-90 DAYS PAST DUE | OVER 90 DAYS PAST DUE | Amount Due |
|---|---|---|---|---|---|
| 0.00 | 485,415.00 | 575,775.00 | 422,415.00 | 150,300.00 | $1,633,905.00 |